HAMLIN, Receiver, vs. WRIGHT and others.

*Fraudulent conveyance. Evidence of fraud.—Admission of new evidence after report of referee.*

1. Where grantor of land had threatened, pending a suit against him, to put his property out of his hands unless the plaintiff therein would settle for a certain sum, and, after her refusal, conveyed the land to his own brother for a balance pretended to be due on a settlement of their partnership accounts—the land being worth several times the amount of such pretended balance—and put the deed on record, the day verdict was found against him in said suit, and continued thereafter to manage the property and receive the profits as before : *Held*, that the deed was fraudulent and void as against the judgment in said suit.

2. One who purchased of the fraudulent grantee, with knowledge of such suit, and of the relations between said grantee and his grantor, and of the fact that the deed was recorded just before such judgment was entered, *held*, not an innocent purchaser, the facts being sufficient to put him on inquiry.

3. A purchaser, in good faith, from a fraudulent grantee, will not be protected as to purchase moneys paid by him after service of summons upon him in an action by a judgment creditor of his vendor's grantor to have the several sales adjudged fraudulent and his judgment declared a lien on the land.

4. Where the testimony in a cause has been taken and reported by a referee, the court has discretion to admit further evidence at the trial.

5. If further evidence was thus admitted for one party, the other cannot object that he had no opportunity to introduce rebutting evidence, unless he applied for and was refused a reasonable time to procure it.

6. A judgment clearly right upon the evidence reported by the referee, will not be reversed for an abuse of discretion in admitting further evidence.

APPEAL from the Circuit Court for *Winnebago* County.

In an action by Emily C. Hardy against *Isaac H. Wright,* in which judgment was rendered for the plaintiff for over $4,000, the present plaintiff, upon proceedings supplementary to execution, was appointed receiver of all debts, property, etc., of said *Isaac H. Wright.* In that character he brought this action to set aside, as fraudulent, a conveyance of land from said *Isaac H.* to *Aaron B. Wright,* and a subsequent conveyance by the latter to one *Libby,* and for other purposes. The facts appearing from the evidence, as understood by this court, are sufficiently stated in the opinion. The defendants appealed from a judgment in favor of the plaintiff.

*Freeman & Hancock,* for the appellants, argued that the real estate conveyed by *I. H. Wright* to *A. B. Wright,* was purchased with partnership funds, and as partnership property was first subject to the claims of *A. B. Wright* for any unadjusted balance existing in his favor on account of the partnership business between him and his brother; that the private creditors of *I. H. Wright* could have no lien upon the partnership property until the balance in favor of his brother was adjusted and paid out of such property (*Phillips v. Cook,* 24 Wend. 398; *Lucas v. Laws,* 27 Pa. St. 211; *Tappan v. Blaisdell,* 5 N. H. 193; *Inbusch v. Farwell,* 1 Black (U. S.), 566; *Pierce v. Jackson,* 6 Mass. 242, 271; *West v. Skip,* 1 Ves. Sen. 239; *Ex parte Ruffin,* 6 Ves. 119; 12 Wis. 264); that to render a deed fraudulent, both parties must concur in the intention to defraud the creditors of the grantor (*Waterbury v. Sturtevant,* 18 Wend. 353; *Sands v. Hildreth,* 14 Johns. 493, and 2 Johns. Ch. 35, and *Clarke v. Davenport,* 1 Bosw. 95); and that the defendant *Libby* purchased for a valuable consideration, and could not be affected by the fraud, if any there were, between the original parties. 6 Cranch, 132; 10 Johns. 185; 13 id. 471; 4 id. 407;

8 id. 141; 1 Johns. Ch. 213; 3 id. 129, and 21 Wend. 222.

*H. B. Jackson* and *Felker & Weisbrod*, for respondent, cited, upon the general subject of fraudulent conveyances and notice to purchasers, 1 Story's Eq. §§ 369, 353 and 400; 1 Johns. Ch. 261 and 268; 4 id. 46 and 536; 2 Paige, 202; 1 Conn. 295; 13 Wis. 460; 19 id. 490; 18 id. 539; 2 id. 261 and 279; 4 id. 1; and 7 id. 263.

PAINE, J.    All the circumstances preceding, attending and subsequent to the conveyances sought to be set aside in this suit, clearly show that they were designed merely to defeat the collection of the judgment of Hardy against *Isaac H. Wright*. The two *Wrights* had practiced medicine in partnership for nearly twenty years without any settlement, other than by joint investment of a considerable part of their funds in real estate, and by a practical division of the remainder as they went along; which division, although it may not have been entirely equal, owing perhaps to the fact that one brother had a family and the other none, was evidently all that they ever intended to make.

But the suit of Hardy v. Wright arose.    During its pendency, the defendant threatened that if the plaintiff would not take six hundred dollars, which he offered in settlement, he would put his property out of his hands, and she should never collect a cent.    His object in making the conveyances was evident enough without this, but we have here his explicit announcement of it in advance.    Notwithstanding his threats, the suit was prosecuted.    And when it was approaching its end, these conveyances were executed.    I. H. *Wright* transferred all his interest in the partnership property to his brother, upon no other consideration than a balance claimed to be due on a pretended settlement of their partnership accounts, and a release of

his brother's interest in a part of their joint property, which *I. H. Wright* occupied as a homestead. Such a result certainly seems remarkable. The partner who is claimed to have been the shrewd financial man of the firm, is suddenly found to be worth nothing, while the simple-minded and purely professional brother, whose thought was wholly engaged in the healing of the sick, has unconsciously absorbed the large fortune consisting of the entire accumulations of both brothers for twenty years. But the deeds, though executed, were not put on record until the very day of the verdict. This fact explains why *I. H. Wright* was so anxious to get home from Fond du Lac county (to which the suit had been removed) in advance of the regular train, that he went part of the way on foot, and employed a hand car to take him the rest, upon the pretense that his child was sick. It is very evident that if the verdict had been in his favor, he would have been in no such haste to get home; that the deeds would not have gone on record; and that, if he owed his brother anything, the latter would have forgiven him the debt. This conclusion is rendered still more apparent by considering the liberal manner in which the account was stated in favor of the brother, and the slight valuation put upon the property conveyed, in order to make it correspond in amount with the balance of the account. This latter consideration alone stamps the transaction as unmistakably fraudulent, for it shows that the real value of the property conveyed was at least two or three times the amount of any just indebtedness between the brothers, even assuming the correctness of their own basis of settlement.

So, after the conveyances, *I. H. Wright* continued to manage the farms and receive the profits as he had before, without rendering any account.

In short, the conclusion that these conveyances were designed solely to defeat the collection of the

judgment, and that they were so understood by both brothers, is so apparent from all the general features of the case, that it would seem superfluous and unnecessary to enter upon any examination of the evidence in detail to establish that result.

The only question about which there is any room for hesitation, grows out of the claim of the defendant *Libby* to be a *bona fide* purchaser for value. It appears that *Libby* paid a considerable portion of the purchase money after the service of the summons upon him in this suit, so that, as to such portion, he would not be entitled to protection even though he had no previous notice. But without relying upon that, we think the court below properly held him chargeable with notice. He was an old resident of Oshkosh, and had known the *Wrights* during all the time he had resided there. He was, without doubt, generally familiar with their property. He was also familiar with the facts in relation to the *Hardy* suit. And upon the abstract of the title which he procured before purchasing, he found the judgment against *I. H. Wright*, which was entered in that suit. It is true that *I. H. Wright* had conveyed to his brother just before that judgment was entered. But it must have occurred to any one as familiar with their affairs and with the facts concerning that suit as *Libby* was, that this conveyance was of an exceedingly suspicious character. His suspicions were, in fact, aroused, and he consulted an attorney as to the effect of that judgment. The attorney, evidently relying on the mere fact that the judgment was subsequent to the conveyance, advised him that he could buy. And on that, without making any further inquiries concerning the facts attending the conveyances, he bought the farm. He ought to be held to have done so at the risk of having his purchase set aside, if the fraudulent intent to defeat the judgment, which he evidently strongly suspected to have existed in the

conveyance from *I. H. Wright* to *A. B. Wright,* is proved in fact, as it is beyond all question.

The findings and judgment of the court below seem to have been entirely correct, upon the general merits of the case.

And there was no error in allowing the plaintiff to introduce, at the hearing, the record of the mortgage given by *Libby* for part of the purchase money, although the testimony in the case had been taken before a referee and reported to the court. The allowance of additional evidence is always, under such circumstances, a question for the discretion of the court. If the character of such evidence was such that it became necessary for the other party to have further time to meet it by opposing proof, and this was refused, that might constitute such an abuse of discretion as to amount to error. But here no such question is presented. The defendants simply objected to the evidence on the ground that the testimony had been closed. It is true, they stated also, as a ground of objection, that they had no opportunity to rebut this evidence. But that is not enough. If they really desired to rebut it, they should have offered their evidence if they had it at hand, and if not, should have asked for reasonable time to get it. If this had been done, and the evidence, being material, had been rejected, or the opportunity to procure it had been refused, it might have been error sufficient to justify a reversal if the additional evidence so offered by the plaintiff had been necessary to the support of the judgment. But here it is a sufficient answer to say, that as the new evidence related merely to the time of paying a part of the consideration paid by *Libby,* and as we have held him chargeable with notice sufficient to put him on inquiry, the question as to the amount of consideration he had paid when this suit was begun, becomes immaterial.

*By the Court.*—The judgment is affirmed.