BARKER, Receiver, etc., vs. DAYTON and another.

(1–4) SUPPLEMENTARY PROCEEDINGS *to enforce judgment for alimony in divorce suit.* (5–9) ACTION BY RECEIVER *to set aside husband's conveyance of homestead, as fraudulent.* (10, 11) CONSTITUTIONAL LAW: *Meaning of* "allodial," *in sec. 14, art. I of the State Constitution.*

| 28 | 367 |
| 86 | 138 |
| 28 | 367 |
| f110 | 5532 |
| 28 | 367 |
| 112 | 1318 |

1. Courts in this country possess no powers in actions for divorce, except such as are conferred by statute.

2. Supplementary proceedings to enforce a judgment are proceedings *in the action* in which such judgment was rendered, and not a separate action or proceeding, like a creditor's bill.

Barker, Receiver, etc., vs. Dayton and another.

3. Under sec. 15, ch. 111, R. S., the judgment for alimony in a divorce suit may be enforced by supplementary proceedings.

4. Where the sheriff's return of *nulla bona* upon an execution, was made and signed before supplementary proceedings were commenced, the fact that the execution was not filed until after the commencement of the proceedings, will not vitiate them.

5. The receiver appointed in such proceedings may bring an action under sec. 96, ch. 134, R. S., to compel a conveyance to him of land, and to remove obstructions and settle adverse claims.

6. In such an action by the receiver in a divorce suit, relating to land conveyed by the husband, an allegation in the complaint that at the date of the conveyance, the land, with the dwelling house situate thereon, was owned and occupied by the husband and wife as their home, and that the conveyance, made without the signature, assent or knowledge of the wife, was a pretended and fraudulent one, executed with intent to delay and prevent the collection of her judgment for alimony—*held*, a sufficient averment of title or interest in the husband to sustain the action.

7. By this conveyance ·of the land, the husband lost all claim to it as a homestead, and therefore cannot deny fraud in the conveyance on the ground that, as a homestead, the land was not subject to sale on execution.

8. Had such conveyance not been made, perhaps the land could not have been sold on execution in the divorce suit, but the wife's remedy would have been to have a portion of it set off to her, and title thereto passed to her by the judgment in that suit.

9. A wife driven from her home by the husband's cruelty retains all her legal rights as such, as if she had continued to live with her husband, including her rights in respect to the homestead.

10. In sec. 14, art. I of our state constitution, by which "all lands within the state are declared to be allodial, and feudal tenures are prohibited," the word *allodial* is used in the sense of *free*, or not subject to the burdens, and the restrictions on alienation, connected with feudal tenures; and the legislature is not prohibited from regulating the modes of conveyance, or the right of dower, or other rights growing out of the domestic relations.

11. So much of ch. 134, R. S., as declares that any mortgage or other alienation of a homestead by the owner thereof, if a married man, shall not be valid without the signature of the wife, is not in conflict with said section 14.

APPEAL from the Circuit Court for *Rock* County.

In 1867, Sarah A. Dayton obtained a judgment of divorce *a vinculo*, against the defendant *Jeremy S. Dayton*, and a further judgment for $800 as alimony, and $77.41 as costs of the action. The judgment directs that execution issue to collect the amount allowed for alimony, and adds: "It is further ordered that the defendant   *   *   *   forthwith give sufficient security to the said plaintiff for the payment of this judgment; and until such security is given, this judgment is ordered and is hereby adjudged to be a lien upon all the real estate of the defendant, situate in the county of Rock and state of Wisconsin, from the time when this judgment is docketed in the office of the clerk of the circuit court for said county; which the plaintiff is hereby permitted to have done, and said clerk is hereby directed to do." The record does not show that the order to give security was ever complied with.

This judgment was docketed September 25, 1867; and execution was issued thereon, which, as found in the record, contains an endorsement by the sheriff, in the usual form of a *nulla bona*, under date November 25, 1867; and also the following endorsement by the clerk of the court: "Returned and filed April 30, 1868." In January, 1868, supplementary proceedings to enforce the judgment for alimony and costs were commenced before the county judge of said county. The affidavit of Mrs. Dayton's attorney, on which such proceedings were based, stated that execution had issued as aforesaid, and that it had been "returned unsatisfied." In these proceedings the present plaintiff, *Barker*, was appointed receiver of all the debts, property and equitable interests of said defendant. As such receiver he brought this action against *Jeremy S. Dayton* and his father, *Justus Dayton*, to set aside a "pretended conveyance" by the former to the latter, in December, 1866, of a certain piece of land containing about eighteen acres, on the ground that such conveyance was fraudulently made, with knowledge that said Sarah A. Dayton was about to apply for a divorce *a vinculo*, and for the purpose of preventing the en-

forcement of payment of any judgment for alimony which she might obtain. The complaint contains, *inter alia*, an averment of plaintiff's appointment as receiver, and also proper averments to show that the land in question was the homestead of *Jeremy S. Dayton* and his said wife, at the time of such conveyance; and that the conveyance was made without her consent or signature. Prayer, that said conveyance be declared void; that the rents, etc., of said land, and all personal property of *Jeremy S. Dayton* be sequestered; and that *Justus Dayton* be adjudged to assign to plaintiff all equitable interest which *Jeremy S.* has in the farm occupied by said *Justus*; and for general relief.

*Jeremy S. Dayton*, by his answer, denies all the material averments of the complaint, including those relating to plaintiff's official character; and, among other things, denies that the land in question was owned and occupied as a home by him and his then wife, or either of them, at the time of said conveyance, or at any time after November 25, 1866; and he alleges that on or about the 14th of that month, said Sarah A., without any provocation, abandoned said defendant and said premises, taking with her nearly all the household furniture, to the value of at least $500; that she was never in the dwelling house on said premises after November 19, 1866, and left it with the intention of never returning to it; that said defendant abandoned said premises on or about the 26th of the same month, with the intention of not living there any more, and went to live with said *Justus Dayton*, at his home.

There was also an answer by *Justus Dayton*, fully traversing the allegations of the complaint.

On the trial, defendants objected to the admission of any evidence under the complaint, on the ground that it did not state a cause of action, and that it did not show that plaintiff had a right to bring the action. The objection was overruled. Defendants also objected to any evidence tending to show that the premises described in the deed, from *Jeremy S.* to *Justus Day-*

*ton*, was the homestead of Mrs. Dayton at the time such deed was executed. They also objected to the introduction in evidence of the record of the proceedings supplementary to execution, on the grounds that it did not show the statute relating to such proceedings, to have been complied with, nor that the judge "ascertained whether any other supplemental proceedings were pending against *Jeremy S. Dayton*, as required by sec. 95, ch. 134, R. S. ; and for the further reason that said supplemental proceedings were not authorized by law." These objections were overruled, and said record read. Mrs. Dayton, as a witness for plaintiff, testified as to the circumstances under which she left her husband and the premises in question, prior to the execution of the deed to *Justus Dayton* ; and also gave testimony tending to show that said premises were the homestead of the family at that time. Plaintiff also put in evidence, against objection, the judgment and execution in the divorce suit.

The defendant moved for a nonsuit, on the grounds that plaintiff had failed to establish a cause of action ; that his appointment as receiver was illegal ; that he had not obtained leave of the court to bring this suit ; and that Mrs. Dayton should have proceeded under sec. 27, ch. 111, R. S. The motion was denied. Defendant's evidence need not be stated.

The court found the facts, in general, as alleged in the complaint. As to the question of homestead, it found that the premises were the residence and homestead of *Jeremy S.* and Sarah A. Dayton, on the 19th of November, 1866, and for several years prior thereto ; that prior to that day, said *Jeremy S.* treated his said wife in a cruel and inhuman manner ; that by reason of such treatment she was compelled to leave her home on said last mentioned day, and that she had good reason for so leaving it ; that said *Jeremy S.*, within three days thereafter, abandoned said premises, with the intention of depriving said Sarah A. of her right and interest therein ; that on the 1st of December, 1866, without the knowledge or consent of his wife, and in

fraud of her rights, and in collusion with said *Justus Dayton*, he made the conveyance to the latter here in question, with the intent, etc. ; and that said premises were the homestead of Sarah A. Dayton when she obtained a judgment for divorce, and she never had abandoned any of her rights therein. The court also found that the premises were worth from $600 to $900, when said judgment of divorce, etc., was rendered. As conclusions of law, it held that the sale and conveyance in question were void as against Sarah A. Dayton, and that the plaintiff herein was entitled to a conveyance from defendants, of the land, to be sold by him under the direction of the court, and the proceeds applied in satisfaction of the judgment for alimony and costs.

Judgment accordingly ; from which, upon exceptions to both the findings of fact and the conclusions of law, the defendants appealed.

*Cassoday, Merrill & Dixon*, for appellants, contended that supplementary proceedings are unauthorized upon a judgment for divorce with alimony; and as leading to that conclusion they argued : (1.) That at common law in this country, the marriage tie was indissoluble during the life time of the parties, except by special act of the legislature; and the statute of divorce conferred upon married persons the right, under certain circumstances, to obtain a dissolution of the marriage, and upon the courts the powers and jurisdiction necessary to secure and enforce that right. *In re Gill*, 20 Wis., 691 ; *Burtis v. Burtis*, 1 Hopk., 557 ; *Perry v. Perry*, 2 Paige, 506 ; *Shannon v. Shannon*, 2 Gray, 287 ; *Parsons v. Parsons et al.*, 9 N. H., 309 ; *Wright v. Wright*, 2 Md., 429, 447 ; *Campbell's Case*, 2 Bland, 235 ; *Dickinson v. Dickinson*, 3 Murphy, N. C., 327 ; *Motley v. Motley*, 31 Me., 491 ; *Harrington v. Harrington*, 10 Vt., 505 ; 2 Kent's Comm., 98; 1 Cooley's Blacks., 439, note 18. (2.) That alimony is but an incident of divorce, and cannot be obtained through any other proceeding, or unless authorized by statute. *Davol v. Davol*, 13 Mass., 294 ; *Shannon v. Shannon*, 2 Gray, 288 ; *Smith v. Smith*, 3 S. & R., 249 ; *Parsons v. Par-*

*sons*, 9 N. H., 319; *Wilson v. Wilson*, 2 Dev. & Bat., 377; *Harrington v. Harrington*, 10 Vt., 505; *Chapman v. Chapman*, 13 Ind., 397; *Ball v. Montgomery*, 2 Ves., Jr., 195; *Bowman v. Worthington*, 24 Ark., 522, and 6 Am. Law Reg., N. S., 621· (3.) That when a new right and also the means of enforcing it are given by statute, parties seeking to enforce that right must rely exclusively upon the means so provided. *Durant v. Supervisors*, 26 Wend., 91, 107; *Dudley v. Mayhew*, 3 Coms., 15; *Hollister v. The Hollister Bank*, 2 Keyes, 248; *Lang v. Scott*, 1 Blackf., 405; *Gedney v. Inhabitants, etc.*, 3 Mass., 309; *Andover, etc., v. Gould*, 6 Mass., 44; *Franklin Glass Co. v. White*, 14 id., 288; *City of Boston v. Shaw*, 1 Met., 138. Our statute of divorce (R. S., ch. 111, sec. 27) provides adequate means for the enforcement of a decree of alimony, and gives a summary remedy in case of non-payment. Security may be required of the husband; and in default thereof, or in case of non-payment, provision is made for sequestration of his estate, and the appointment of a receiver, and all this by proceedings in the original suit. (4.) Specific provisions relating to a particular subject must govern in respect to it, to the exclusion of general provisions in other parts of the law, which might otherwise be broad enough to include it. *Morgan v. R. R. Co.*, 10 Paige, 290; *Hinds v. R. R. Co.*, 10 How. Pr. R., 489; *Sherwood v. R. R. Co.*, 12 id., 137; *Griffin v. Dominguez*, 2 Duer, 658; *Graham v. R. R. Co.*, 10 Wis., 466; *Adler v. Mil. P. B. Man. Co.*, 13 id., 64; *Myer v. Gleisner*, 7 id., 55; *Price v. Dietrich*, 12 id., 627; *Pelt v. Pelt*, 19 id., 196; *Farmers' L. and T. Co. v. Warring*, 20 id., 292; R. S., ch. 191, sec. 1. (5.) The award of alimony, though termed a "judgment," is of the nature of a decree in equity, and the provisions of the code authorizing supplementary proceedings are inapplicable. "The court may, from time to time, on the petition of either of the parties, revise and alter such judgment respecting the amount of such alimony or allowance, and the payment thereof, and also respecting the appropriation and payment" of a principal sum.

R. S., ch. 111, sec. 28. Such a judgment, therefore, "cannot be regarded as a decree absolute for the payment of a judgment at law, nor has it the force and effect of a judgment at law." It can only be enforced n a court of chancery; and an action at law will not lie to enforce payment of arrears of alimony. *Barber v. Barber,* 1 Chand., 284; *Van Buskirk v. Mulock,* 3 Harrison (N. J.), 184; *Battey v. Holbrook,* 11 Gray, 213. Nor in England could resort be had to a bill in equity. *Stones v. Cooke,* 8 Sim., 321; *Vandergricht v. DeBlaquiere,* 8 Sim., 322. Supplementary proceedings are not a continuance of the original action, but are *special proceedings* (R. S., ch. 122, sec. 1), and of the nature of a new suit. *Griffin v. Dominguez,* 2 Duer, 658; *Campbell v. Foster,* 16 How. Pr. R., 275; *Becker v. Torrance,* 31 N. Y., 635, 636; *Graham v. R. R. Co.,* 10 Wis., 459; *Ernst v. Steamer Brooklyn,* 24 id., 617; *Petition of Mary O'Brien,* id., 548. They are a substitute for a suit in equity, to enable courts of law to enforce their judgments; but here was a court of equity having jurisdiction and full power to enforce its judgment. "The proceeding for divorce is so far special as to allow all the provisions of the divorce act to have their full force and effect unaffected by the code." *Ewing v. Ewing,* 24 Ind., 468; *Gilruth v. Gilruth,* 20 Iowa, 225; *Chase v. Ingalls,* 97 Mass., 524; *Lyon v. Lyon,* 21 Conn., 197; *Goss v. Goss,* 29 Ga., 109. (6.) It does not appear whether or not the order upon *Jeremy S. Dayton* to give security for the payment of the judgment for alimony was complied with. The court was not authorized to sequester the estate or appoint a receiver until after a failure to comply with that order; and if security was given, it must first be exhausted. *Forrest v. Forrest,* 9 Bosw., 686. Much stronger reasons exist against complicating the matter by a resort to supplementary proceedings and the appointment of a receiver therein. Certainly, a party who has commenced under one proceeding *cannot resort to another at the same time.* (7.) Although the code has been in operation in New York over twenty years, not a single case, it is believed,

can be found, either in that or any other state, where resort has been attempted to supplementary proceedings to enforce a judgment for alimony. This affords a strong presumption that such proceedings are not authorized. *Van Buskirk v. Mulock, supra; Stewart v. Laird,* 1 Cranch, 95 ; *Commonwealth v. Cornish,* 13 Pa. St., 291 ; Smith on St. & Com. Law. § 624. (9.) The return of an execution unsatisfied, in whole or in part, is a fact which must exist to give the county judge jurisdiction either of the subject matter or of the person. R. S., ch. 134, sec. 88 ; *Wegram v. Childs,* 44 Barb., 403 ; *Campbell v. Foster,* 16 How. Pr. R., 275. The execution here was required to be returned to the office of the clerk of the court (R. S., ch. 134, sec. 9); and the certificate of the clerk is conclusive as against any possible record of the sheriff. *Ellison v. Wilson,* 36 Vt., 60. Plaintiff's evidence shows that the execution was not returned and filed until long after the proceedings before the county judge. 2. Counsel also contended that the complaint states no cause of action in plaintiff's favor, even admitting the validity of his appointment as receiver. (1.) The wife, ignoring her right to reach the homestead by proceedings in the original action, can resort to supplementary proceedings only upon the theory that she stands in the position of an ordinary judgment creditor. But the judgment creditor is powerless to reach the homestead. A receiver appointed under supplementary proceedings, cannot maintain an action to set aside an alleged fraudulent conveyance of a homestead (*Dreutzer v. Bell,* 11 Wis., 114; *Pike v. Miles,* 23 id., 168); and the homestead is exempt from sale under execution issued upon a judgment for alimony. *Byers v. Byers,* 21 Iowa, 268. (2.) The receiver appointed in supplementary proceedings is entitled only to property owned by the judgment debtor *at the time of his appointment* (*Campbell v. Genet,* 2 Hilt., 290; *Graff v. Bonnett,* 25 How. Pr. R., 470); and a complaint failing to allege property in the judgment debtor at that time, positively and affirmatively, and not by way of reference, is

fatally defective. *McElwain v. Willis*, 9 Wend., 562. The statute (R. S., ch. 134, sec. 96) authorizes an action to recover property of the judgment debtor, claimed by a third person; but the complaint does not allege either that the land in question is the property of *Jeremy S. Dayton*, or that *Justus Dayton* claims an interest in it. See *Gamble v. Loop*, 14 Wis., 466. (3.) Plaintiff cannot fall back on the general powers of a common law receiver, independent of sec. 96, ch. 134, R. S., because he has not brought his action in conformity with the rules laid down for actions by such receivers in *King v. Cutts*, 24 Wis., 268; and because he would still be required to allege that the land in question is the property of *Jeremy S. Dayton*. (4.) No conveyance to the receiver of the title to the land in question was shown; and therefore he cannot maintain the action. *Wilson v. Wilson*, 1 Barb. Ch., 594; *Chautauque Bank v. Risley*, 19 N. Y., 374; *Bostwick v. Menck*, 40 N. Y., 383; *Moak v. Coats*, 33 Barb., 498; Voorhies' Code (10th ed.), 350*a*. 3. Counsel further argued that if Mrs. Dayton had deserted her husband without good cause, she had forfeited all right to the homestead (*Earle v. Earle*, 9 Tex., 630; 1 Am. Law Reg., 713; Tyler on Inf. and Cov., 796); that the cause must be such as would entitle her to a divorce (*Eshbach v. Eshbach*, 23 Pa. St., 345; *May v. May*, 62 id., 206); that *Justus Dayton* not having been a party to the divorce suit (in which there was no appearance by the defendant), this was a question of fact to be determined in this action; and that the evidence herein did not show any just ground for a divorce. *Johnson v. Johnson*, 4 Wis., 135. They also raised a query whether the last clause of sec. 24, ch. 134, R. S., which imposes a disability upon the husband as to alienating the homestead without the signature of the wife, is not repealed by sec. 1, ch. 137, Laws of 1858 (R. S., p. 798). 4. Counsel further argued at length that the disabling clause just mentioned is unconstitutional, (1.) Because an act of the legislature depriving a citizen of the power of voluntarily aliena-

ting lands within this state, of which he is *the sole owner*, is not within the proper scope of the legislative authority. 1 Cooley's Blacks., Preface, p. X, and Book I, p. 137; *People v. Township Board*, 19 Mich., 11; Cooley's Const. Lim., 37; *Osborne v. Hart*, 24 Wis., 89; *Hamilton v. St. Louis*, 15 Mo., 13; *Matter of Oliver Lee & Co.'s Bank*, 21 N. Y., 9. (2.) Because it is in direct conflict with the first clause of sec. 14, art. I of our state constitution, by which "all lands within the state are declared to be *allodial*, and feudal tenures are prohibited." On this point counsel contended, first, that one of the principal elements of feudal tenures was, that the feudatory could not independently alien or dispose of his fee (1 Reeves' Hist. Eng. Law, 42; 4 Cruise Dig., title 32, ch. 26, sec. 1, p. 491; Bingham on R. P., 598; 3 Kent's Comm., *506); and secondly, that the term "allodial" describes "free and absolute ownership," "the independent ownership," "in like manner as personal property is held;" the "entire right and dominion;" that it applies to lands "held of no superior" to whom the owner owes "homage or fealty or military service," and describes an estate "subservient to the purposes of commerce," and "*alienable at the will of the owner*"—"the most ample and perfect interest which can be owned in land." 3 Kent's Comm., *495, *499; 1 Hilliard on R. P., 39, 40; 1 Washb. R. P., 28 [*16, *17]; Burr. Dic., "Allodium;" 3 Comstock's Kent's Comm., *498, note *a*. If the legislature can restrain the owner of a homestead from alienating it without the consent of his wife, it may also require the assent of the heir, or the governor, or any other functionary. "There was a time in the *early* history of the *feudal* law, when the owner of an estate of inheritance was not allowed to alien the estate without the *consent of his heir* * * * ; and this *right of heirs* was made one of the principle obstacles to the *alienation* of estates of inheritance." Bingham on Descents, 2, 3, citing Dalrymple on Feudal Prop., 94–96; Crabb's Hist. of Eng. Law, 90, 91. Wherein does the disability differ from the one in

question? And if the one is prohibited, why is not the other? Again, another feature of this section shows that the intention was to prohibit all restraints upon the free alienation of land. By the second clause, the grantor of land is prohibited from reserving restraints upon alienation, even in his own grant. So this court has held that a restriction in a patent of lands from the United States, against alienation by the grantee *without the permission of the president*, was void. *Sitzman v. Pacquette*, 13 Wis., 313.

*Bennett & Norcross*, for respondent, argued, among other things, that Mrs. Dayton, having been driven from her home by the cruelty of her husband, lost none of her rights 'in the homestead by such abandonment (Bishop on M. & D., 653-657; Tyler's Inf. & Cov., 891; Reeves' Dom. Rel., 3d ed., 327; 16 Md., 223-247; 4 Denio, 46; 18 Tex., 528; 3 Met., 247; 3 Bing., 127); that the sale and conveyance of the premises was therefore void (R. S., ch. 134, sec. 24; *Platto v. Cady*, 12 Wis., 461; *Spence vs. Fredendall*, 15 id., 666; *Hait v. Howle*, 19 id., 472); that after the decree of divorce, the premises being no longer a homestead, and the sale to *Justus Dayton* being fraudulent, the property was subject to execution to satisfy the judgment for alimony; that the action was properly brought to have the conveyance determined to be fraudulent, and thereby remove the obstruction caused by such conveyance (*Porter v. Williams*, 9 N. Y., 143; 2 Till. & Sherm. Pr., 881, note; R. S., ch. 134, sec. 95, and ch. 129, sec. 13); and that it was proper, under the circumstances, for the court to order defendants to convey to the receiver, and for the receiver to sell the premises and apply the proceeds on the judgment for alimony. *Gunn v. Blair*, 9 Wis., 352; *Sands v. Codwise*, 4 Johns., 536; *Chantauque Co. Bank v. White*, 2 Seld., 236.

DIXON, C. J. Counsel for the defendants argue several minor propositions or points in support of the first general proposition insisted on by them, which is, that supplementary

proceedings and the appointment of a receiver are unauthorized upon a judgment for divorce with alimony, or to enforce payment or satisfaction of the judgement for alimony in such case. There is high authority for saying, independently of any statutory provision to that effect, that a suit or action in equity will be maintained to compel payment of alimony which has been decreed to the wife in such case (*Barber v. Barber*, 21 How., 582); and, regarding supplementary proceedings under the code as a substitute to some extent for the former proceedings by bill in chancery to compel payment and satisfaction of judgments, it is not improbable that supplementary proceedings for the purpose here instituted might be sustained on the same ground. But counsel have thought proper to put their objection altogether upon the ground that such proceedings are not authorized by the statute of divorce, and that, not being so authorized, they cannot be maintained. We propose to consider the question in the same point of view, believing, as we do, that the proceedings are authorized by the divorce act. It is an undoubted general principle of the law of divorce in this country, that the courts, either of law or equity, possess no powers except such as are conferred by· statute; and that, to justify any act or proceeding in a case of divorce, whether it be such as pertains to the ground or cause of action itself, to the process, pleadings or practice in it, or to the mode of enforcing the judgment or decree, authority therefor must be found in the statute, and cannot be looked for elsewhere, or otherwise asserted or exercised. This general principle being fully conceded, the several minor propositions of counsel which were intended for the most part to illustrate and enforce it, and do do so, become unimportant in the view we have taken of the statute.

Section fifteen of the statute reads as follows: " Actions to annul or affirm a marriage, or for a divorce, and all other matters coming within the provisions of this chapter, not otherwise specially prescribed, shall be conducted in the same manner as other actions in courts; and the court shall have power to award

issue, to adjudge costs, *and to enforce its judgments, as in other cases.*" R. S., ch. 111, § 15. It cannot be claimed that it is "otherwise specially prescribed" by the statute, that supplementary proceedings shall not be instituted, to compel payment of a judgment for alimony; and the only question which can possibly arise upon the construction of the section is, whether the words, "and to enforce its judgments, as in other cases," are to be applied or limited to proceedings in the action itself for divorce, or whether they are to be considered as extending to other or independent proceedings for the purpose of enforcing the judgment. But we are not required to decide this question, since it has been held, and we think correctly, that a supplementary proceeding is a proceeding in the action itself, and not a distinct and independent action or proceeding, like the former creditor's bill in equity. This was expressly so held by the supreme court at general term, in *Bank of Genesee v. Spencer*, 15 How. Pr. R., 412; and by the superior court of New York also, at general term, in *Dresser v. Van Pelt*, id., 19. And see also the opinion of WILLARD, J., in *Davis v. Turner*, 4 How. Pr. R., 190. The very name *supplementary proceeding* implies that it is a proceeding in the same action, although it is to some extent, and in many cases, perhaps, fully, a substitute for a creditor's bill under the old practice. 24 Wis., 548; 10 Wis., 459; 31 N. Y., 635; 2 Duer, 688; 16 How. Pr. R., 278. It follows that the objection to the proceeding itself, or that it is unauthorized and will not lie in this particular case, must be overruled.

It is next objected that the complaint in this action is insufficient because it does not charge the real estate in controversy to be the property of the defendant *Jeremy S. Dayton*. The complaint alleges that at the date of the conveyance, the land, with the dwelling house thereon situated, was owned and occupied by the wife, Sarah A. Dayton, and her husband, the defendant *Jeremy S.*, as their home; and that the conveyance by the defendant *Jeremy S.*, without the knowledge, assent or signature

of his wife, was a pretended or fraudulent one, executed with intent to delay and prevent the collection of the judgment in her favor for alimony. These we deem sufficient allegations of title or interest in the defendant *Jeremy S.*, to sustain this action, which proceeds, not on the ground that he has the actual legal title as between himself and his co-defendant, the grantee named in the alleged fraudulent conveyance, but that such conveyance is fraudulent and void as against the plaintiff, who represents the wife, the defrauded party in the judgment for divorce.

Another objection is, that the execution upon the judgment for alimony was not returned unsatisfied before the institution of the supplementary proceedings and the appointment of the plaintiff as receiver. The return of the sheriff, *nulla bona*, was in fact made and signed by him on the execution before the proceedings were instituted, though the execution does not appear to have been filed in the clerk's office until afterwards. This was sufficient to justify and sustain the proceedings; and the fact that the execution was not filed with the clerk ought not now to be held to vitiate them.

It is likewise objected that an action like this cannot be maintained by a receiver appointed in supplementary proceedings. In the case of *Hamlin, Receiver, vs. Wright and others*, 26 Wis., 50, such an action was instituted by the receiver, and sustained both in the circuit court and in this court, where the judgment in his favor was affirmed. It is true, no objection was taken in that case. It seems to have been assumed, both by court and counsel, that the action was maintainable; and we think there was no error in the assumption. It is an action of the very kind in which the statute declares the receiver shall sue. R. S., ch. 134, § 96. Counsel seem to confound this action, which is brought to remove obstructions, settle adverse claims, and obtain a transfer or conveyance of title to the receiver, with actions brought by a receiver, founded upon an assumption of title in himself, and where such title is necessary, as in actions

for injuries to real estate or to recover possession thereof. The appointment of a receiver vests in him the title to the debtor's personal estate, but the title to real estate is transferred only by virtue of a conveyance to him, which the court has power to compel, as was held in *King, Receiver, v. Cutts,* 24 Wis., 627; in *Chatauque County Bank v. Risley,* 19 N. Y., 369; and in *Moak v. Coats,* 33 Barb., 498. This is a necessary action, and one expressly authorized by statute, to compel a conveyance to the receiver. It is like that instituted by the receiver in behalf of a portion of the creditors in *Becker v. Torrance,* 31 N. Y., 636, 637.

It is furthermore objected, that there was no fraud in the conveyance by the defendant *Jeremy S.* to his co-defendant, and could be none, because the property conveyed was a homestead, and as such exempt from forced sale on execution against him; and the cases of *Dreutzer v. Bell,* 11 Wis., 114, and *Pike v. Miles,* 23 Wis., 168, are cited. A proper answer to this objection seems to be, that the defendant *Jeremy S.* has attempted to convey, and has abandoned the property as *his homestead,* thus voluntarily opening the door, or subjecting the property to forced sale on execution, or otherwise, so far as *he* is concerned. His conveyance, though insufficient for any purpose as against the plaintiff, or Mrs. Dayton, whom the plaintiff represents, may be sufficient to preclude or estop him from setting up the homestead right and privilege of exemption. He appears here defending that conveyance and asserting its validity, a position which is quite inconsistent with any right of homestead or privilege of exemption in himself; and should he succeed in defeating the action on the latter ground, it would be manifestly not for his own benefit and to protect his homestead, but for the benefit of his co-defendant, to whom he has conveyed, and whose title he does not and can not hereafter deny. He is claiming that as a homestead, therefore, which, according to his own showing, is not and can not be such—the privilege of exemption for property in which he has not and can not have any title or interest,

except at the mere will or option of another, who alone is to be benefited by the allowance of such claim. It cannot be that the privilege of exemption is available or has not been forfeited in such a case, especially as to a person so situated as Mrs. Dayton is, who, unlike a general creditor, has the additional and peculiar ground of complaint, that the conveyance was made in violation of the statute requiring her signature, and in fraud of her rights as the wife of the grantor. The defendant *Jeremy S.* is undoubtedly estopped from claiming the property as exempt, and Mrs. Dayton is at liberty, if she chooses, to proceed to a sale of it, through the receiver or otherwise, in satisfaction of the judgment in her favor for alimony. If there had been no conveyance by the husband, and no abandonment of his homestead, a different question would have been presented. It might then have been that no forced sale as upon execution could have been made, but that Mrs. Dayton's remedy for alimony would have been to have had a portion or the whole of the homestead property set off, and the title passed to her in the judgment for divorce.

A question is made as to whether Mrs. Dayton had not forfeited her right to the homestead by the abandonment or desertion of her home before the conveyance made by the defendant. It is well settled that the wife, if driven from her home by the cruelty of her husband, loses no rights, and forfeits none of the immunities or privileges to which she is entitled by law; but that she retains the same without prejudice as if she had remained in the house, or continued to reside with her husband. Such, we are fully persuaded, were the facts with regard to the removal of Mrs. Dayton from her home. She was driven out by the cruelty and neglect of her husband, and consequently lost no rights to which she would otherwise be entitled.

One other, and the final objection we are required to consider in this case is, that the statute declaring that any mortgage or other alienation of 'a homestead, by the owner thereof, if a married man, shall not be valid without the signature of the wife

to the same, is unconstitutional and void. R. S., ch. 134, § 24. This objection is based on the language of the first sentence of sec. 14, art. I of the constitution, which reads as follows: "All lands within the state are declared to be allodial, and feudal tenures are prohibited."

The argument in support of this position was, to say the least of it, ingenious and plausible, and I must confess I was quite interested in it. But we do not think it was sound. It proceeded chiefly upon the meaning of the word "allodial," or "*allodium*," as defined in the books; and much learning and research were shown in that particular. If the provision of the constitution had ended with the word "allodial," as there found, it would have been much more difficult to answer the position of counsel than it now seems to be. Taking that word as defined by lexicographers and writers on the law, and giving full effect to such definition without regard to the residue of the sentence, it is not easy to say that counsel are so far wrong in the conclusion at which they arrive. But it is well understood that words often undergo an important modification in sense and meaning, by the connection in which they are used. It is true as to a multitude of words and sentences, that the exact meaning or proper sense or intent of the writer cannot be ascertained, or rightly understood, except from the context or connection, and that to select a single word or sentence, and require a determination from that, would not unfrequently lead us entirely astray. We need not go to the grammarians for this, for many of our rules of statutory and constitutional construction are founded upon consideration of the same truth. Taken in connection with the residue of the sentence, therefore, we are able to say, as we think, without much doubt or uncertainty, that the word has no such meaning or far-reaching effect as is ascribed to it by counsel. Taken in such connection, it means little more than if the framers had said "free," or "held in free and absolute ownership," as contradistinguished from feudal tenures, which are prohibited in

the same sentence, and by the very next words, and the prohibition of which, with their servitudes and reservations, and all the attendant hindrances and obstacles in the way of free and ready sale and transfer of real property, constituted the chief object of the provision.

Such being the context and obvious primary purpose of the provision, it is not difficult to say that the word was not used in the sense contended for, but only in that above indicated; for, as argued by counsel opposed, it would seem absurd to hold that the framers of the constitution intended that the legislature should have no power or control whatever over the sale or disposition of real property, so that the owner might transfer it by word of mouth if he chose; that there could be no law requiring the conveyance to be in writing, or signed, or acknowledged, or recorded — no right of dower, or homestead, or other interest created by reason of the domestic or other relations of the owner, and positively no restrictions founded on motives of public or private convenience or policy, or to remedy or prevent public or private mischiefs or wrongs. It is clear that the language of the constitution was never so intended, as all our governmental experience, from the foundation of the state to the present day, fully demonstrates; and yet such would be the logical results of the position assumed by counsel. The position is untenable, and the objection must be overruled.

*By the Court.*— Judgment affirmed.

LYON, J., took no part in this decision, having presided at the circuit when the cause was tried.