FISHER vs. SHELVER.

*November 11 — November 22, 1881.*

MARRIED WOMAN.  *(1) Burden of proof where she claims property by purchase from her husband.*

FRAUD: DEED.  *(2) Valuable consideration not conclusive against fraud.*

REVERSAL OF JUDGMENT:  *(3) For unsatisfactory evidence and misleading instructions.*

1. In a contest for property between a wife and the creditors of her husband, where she claims by purchase from her husband (in this case through an intermediate grantee, who paid and received no consideration), the burden is upon her to prove, by clear and satisfactory evidence, that the purchase was made in good faith, for a valuable consideration, paid out of her separate estate, or by some third person for her.

2. A deed made with intent to defraud creditors is void as against them, although a valuable consideration was paid; and inadequacy of consideration is a badge of fraud.

3. The evidence to sustain the deed to the wife in this case being confused and unsatisfactory, and the instructions erroneous or liable to mislead, a judgment in her favor is reversed for a new trial.

APPEAL from the Circuit Court for *Crawford* County.

Replevin, for a quantity of wheat and oats. The answer was, that the defendant took the grain under a valid execution against Edward Fisher, and that said Edward Fisher was the owner of the property. The plaintiff had a verdict and

judgment; a new trial was refused; and defendant appealed from the judgment.

For the appellant there was a brief by *Thomas & Fuller*, and oral agument by *Mr. Fuller*.

The cause was submitted for the respondent on the brief of *Wm. H. Evans*.

ORTON, J. The defendant, as sheriff, levied an execution, issued on a judgment, for costs, in the case of Mitchell & Co. against one Edward Fisher, on 600 bushels of wheat and 100 bushels of oats, raised on a farm of 160 acres occupied ostensibly by Edward Fisher and his family. Forty acres of this farm belonged to Edward Fisher before he was married to the plaintiff, *Margaret Fisher*, and the other 120 acres were purchased by him soon after such marriage, from one Walker, and the whole was occupied and cultivated together thereafter for about nine years, and in the same way, down to the time of this levy. After this suit of Mitchell & Co. against Edward Fisher was commenced, Edward Fisher conveyed the 160 acres to his brother James Fisher, and at the same time James conveyed the same to the plaintiff, the wife of Edward. In relation to these deeds James Fisher testified as follows: "My brother has 27 acres of land where his house is." "She [the plaintiff] had spoken to me frequently about it, and the arrangement was that this land [the 160 acres] was to be hers, and he was to own the homestead [the 27 acres]." "She claimed that it was paid for with her money, and she always claimed it." "That [40 acres of the 160] was not paid for with her money." "I understood that the understanding was before, that she was to have the land. There was no talk about the money she had paid, or anything about that; my brother had spoken to me that, if anything happened, all the property should be hers, and he said all the property should be settled before anything happened." "It was after the lawsuit with Warder, Mitchell & Co., that they were troubled about this property."

In respect to her separate estate, the plaintiff testified, on cross examination, that her father gave her $266, not in cash but in live stock, and that she has since sold of its natural increase eleven head of cattle, and put the avails into this land; but she had before testified that she received $260 of her father in money, and had loaned it out until the principal and interest amounted to $566, and that this amount, together with what came from the crops on the land, made up the sum of $800 paid for the land, and that her husband paid Walker for the 120 acres this sum which he had received from her, and that her husband had always supported the family. She testified further that she paid Edward Fisher $400 of the $800 when the deeds were made, which was the balance due on the land from her; but Edward Fisher testified that nothing whatever was paid by or to him when the deeds were made. The plaintiff's testimony is very confused, inconsistent and contradictory. The husband, Edward Fisher, was allowed, and perhaps properly, to testify on behalf of the plaintiff as to what he did in respect to this land as her agent; and he swore that he made the deed to his wife during the pendency of the suit of Warder, Mitchell & Co. against him, and after the jury had disagreed on the trial, and that the plaintiff paid him $400, the balance due from her; and when asked where his wife kept this money, he said that part of it was in grain raised on the land, and part in money, and then that it was not in cash, but the same thing. He then testified that there was nothing paid at the time the deeds were made, and that she took the money the crops were sold for and gave it to him, and that he let her keep it. His evidence, if possible, is still more confused, inconsistent and contradictory than that of his wife; and their testimony is all there is in the case to support the claim of the plaintiff that the land on which the grain taken on the execution was raised was her separate property by purchase from him directly, or through the intervention of his brother James, with her own means. In such a case, where the

transactions are exclusively between husband and wife, and only known to them, and there was no consideration for the conveyance of the land by the husband to the stranger, or for that of the stranger to the wife, and such conveyances were made pending the very suit in which the judgment for costs was rendered and sought to be collected on execution by levy upon the product of the land, there is, at least, a favorable opportunity for fraud.

In such a case the extract from the opinion in the case of *Hoxie v. Price*, 31 Wis., 86, so aptly made by the learned counsel of the appellant in his brief, is especially applicable: " On account of the great facilities which the marriage relation affords for the commission of fraud, these transactions between husband and wife should be closely examined and scrutinized to see that they are fair and honest, and not mere contrivances resorted to for the purpose of placing the husband's property beyond the reach of his creditors."

It is said by Mr. Justice TAYLOR, in the opinion in the case of *Horton v. Dewey*, filed at the same time with this opinion: "This court has repeatedly held that, in a contest between the creditors of a husband and the wife, if the wife claims ownership of the property by a purchase, the burden of proof is upon her to prove, by clear and satisfactory evidence, such purchase, and that the purchase was for a valuable consideration, paid by her out of her separate estate, or by some other person for her;" citing *Stanton v. Kirsch*, 6 Wis. 338; *Horneffer v. Duress*, 13 Wis., 603; *Weymouth v. Railway Co.*, 17 Wis., 550; *Duress v. Horneffer*, 15 Wis., 195; *Beard v. Dedolph*, 29 Wis., 136; *Stinson v. White*, 20 Wis., 563; *Elliott v. Bently*, 17 Wis., 591; *Putnam v. Bicknell*, 18 Wis., 333; *Hannan v. Oxley*, 23 Wis., 519; *Fenelon v. Hogoboom*, 31 Wis., 172; *Hoxie v. Price*, id., 82; *Carpenter v. Tatro*, 36 Wis., 297. And it is further said in that opinion: " In all such cases the burden of proof showing the *bona fides* of the purchase is upon her, and she must show by clear and satisfac-

tory evidence that the purchase was made in good faith, with her separate estate, or for a consideration moving from some person other than her husband. In all such cases the presumptions are in favor of the creditors, and not in favor of the title of the wife."

The evidence in this case certainly does not fulfill the requirements of the above rules; but perhaps the preponderance of the evidence against the verdict is not so clear as to justify the court in reversing the judgment solely on that ground, and further comment upon the evidence might prejudice the case upon another trial, and is unnecessary. Considering the weakness of the plaintiff's case, on the evidence, we cannot but think that several of the instructions of the court bore much too strongly in her favor, and tended to supply a want of testimony, and, in application to the facts of the case, were erroneous in law, and were calculated to mislead, and probably did mislead, the jury to the prejudice of the appellant.

The second instruction was: "Such a deed from husband to wife is valid if the money with which it is purchased was the separate money of the wife, and the deed to the husband when it was purchased ought to have been made to the wife." This instruction is divisible, and contains two distinct propositions: (1) The deed by the husband to the wife, and the money with which it is purchased was the separate money of the wife,—meaning clearly that the deed to the wife is valid if the money with which the wife purchased it of her husband was her separate money. This meaning is determined by the use of the present tense in the language "with which it *is* purchased," in connection with the deeding of the land by the husband to the wife. (2) "And the deed to the husband when it was purchased ought to have been made to the wife," clearly refers to another time, and the time when the husband first purchased the 160 acres, because the purchase and the deed to him are coupled together.

The first proposition, in this sense,— and we think the jury

may well have understood it in this sense, and probably did so understand it, because such is its true grammatical construction,— is that the purchase money of the land passing from her to her husband, as the consideration of his deed to her, may have been any amount whatever, however inadequate, and the deed would be valid as against, the creditors of the husband. This proposition of law is none the less erroneous by being coupled with the other; for whether the deed to the husband of this 160 acres ought to have been made to the wife instead of the husband in the first place, is a question of law arising upon the facts, and is not involved in this issue; for the question here is, whether the deed that was actually made to the wife ought to have been made, if any question of this form was proper for the consideration of the jury.

The third instruction is erroneous for the same reason, and was as follows: " If a wife advances money belonging to her separate estate to her husband, with the agreement that land owned by him shall be conveyed to her in payment of the advances, and in pursuance of the agreement the husband conveys to the wife the land, it becomes legally hers, and the crops raised upon it by her, with the assistance of her husband and children, are hers." This instruction not only makes the deed valid in this case, if made in consideration of any amount of " advances " made by the wife to the husband, however inadequate, but ignores entirely the question of fraud, and makes the deed valid, notwithstanding it might have been made with intent to defraud creditors.

The fourth instruction was: " If a husband conveys his land to his wife, either directly or to a third person, to be by him conveyed to the wife, for the purpose of defrauding his creditors, *and* the wife pays no consideration for it out of her separate estate, the conveyance is fraudulent as against creditors." This clearly implies that both of these conditions must exist and concur in order to make the deed void: (1) if made for the purpose of defrauding creditors; and (2) if no considera-

tion is paid. This leaves the inference irresistible that the deed is not void if made for the purpose of defrauding creditors, unless no consideration was paid, which is clearly erroneous. Inadequacy of consideration may be a badge of fraud, and may always be considered in connection with other facts in determining whether a deed was not made with intent to defraud creditors. Bigelow on Frauds, 137. The case of *Hamlin v. Wright*, 26 Wis., 53, is especially applicable to this case touching that point, as also *First Nat. Bank v. Bertschy*, 52 Wis., 438. Other propositions of law involved in these instructions are self-evident, and require no citation of authorities.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial therein.