Martin, Appellant, vs. Remington and wife, Respondents.

*September 20 — October 11, 1898.*

*Debtor and creditor: Conveyance by husband to wife: Consideration:*
*Resulting trust: Agency.*

1. A city lot was purchased and improved with money from the separate estate of a married woman, but the title was taken in the name of her husband. Afterwards, acting through her husband as agent, she traded said lot for other land, receiving some cash, and this, with other money belonging to her separate estate, was invested in speculative purchases of real estate which resulted in large profits, the husband investing no money of his own, but taking the title to the several parcels in his own name for convenience, until finally he conveyed to the wife the lands which were the outcome of the various transactions. *Held,* that prior to the statute (sec. 2077, R. S. 1878), there would have been a valid resulting trust in favor of the wife in each of the various parcels of land so held by the husband, and, although such trusts have been abolished, yet his conveyance in execution thereof was founded upon a sufficient consideration and, in the absence of fraud, is valid even as against his creditors.

2. The increment of a wife's property due to the sagacity and industry of her husband cannot be reached by his creditors.

APPEAL from a judgment of the superior court of Milwaukee county: Geo. E. Sutherland, Judge. *Affirmed.*

This is an action in the nature of a creditors' bill to set aside certain conveyances of real estate made by the defendant *Alvah Remington* to his wife, as frauds upon creditors. The facts were that on the 19th of October, 1892, *Alvah,* with others, guaranteed the payment of a note and mortgage given by a real-estate company upon certain lands in the town of Lake for the sum of $9,000, and the plaintiff thereupon purchased the same. On the 5th of June, 1895, the plaintiff commenced an action of foreclosure of said mortgage, making *Remington* a defendant, and claiming a personal judgment against him and the other guarantors for any deficiency, and the summons was on that day served

Martin vs. Remington and wife.

upon the defendant *Marion Remington, Alvah* not being found. Thereafter judgment of foreclosure was duly obtained, and the real estate sold, and on the 2d of February, 1897, the plaintiff obtained judgment for deficiency against *Alvah* as guarantor for the sum of $8,787.11. Upon this judgment execution was issued and returned unsatisfied, and this action was commenced.

On the 5th of June, 1895, being the same day upon which the foreclosure action was commenced, *Alvah* deeded to *Marion* a house and lot on Marshall street, in the city of Milwaukee (hereafter known as the Marshall street property), also certain lots in Kneeland's addition in said city, no consideration for such transfer being paid by *Marion* at the time. *Alvah* had practically no other property at the time of the transfer, and the conveyance thus made him insolvent. In 1896, *Marion* sold the Kneeland's addition property, receiving a mortgage of $6,000 thereon and certain other real estate in exchange, and she made other transfers of such real estate, which finally resulted in her obtaining title to four lots in Cambridge addition, in the Eighteenth ward of the city of Milwaukee, and subject to a mortgage of $3,000 thereon. In October, 1896, she mortgaged the Marshall street property for $3,500.

The plaintiff's claim is that the transfers of June 5, 1895, were entirely without consideration and fraudulent as to creditors. On the other hand, the defendants claim that this property was all in fact the separate property of *Marion*, resulting from an original investment of $1,900, and that it was held by *Alvah* for convenience only and in trust for her benefit, and that the conveyance thereof was simply made to carry out that trust, with no intent to defraud *Alvah's* creditors.

The evidence further showed that the parties were married in 1887, *Alvah* then being employed at a salary of $60 per month, and being without property, and that *Marion*

then had $500, which she had theretofore earned. In April, 1889, *Alvah* arranged with one Stone to buy two lots in a town plat called "Idlewild No. 2," in the town of Milwaukee, outside of the city limits, for the purpose of building a house and making a homestead thereon. The lots were supposed to be worth $2,000, but were sold to *Remington* for $1,000, in consideration that he would build a house and live thereon. In payment of the $1,000, Stone took *Alvah's* note, indorsed by *Marion* and Mrs. Connolly, her mother. The deed was made out in *Alvah's* name, and the land was thereupon mortgaged by *Alvah* and his wife to a third person, with the proceeds of which mortgage and the $500 possessed by Marion the house was built. The $1,000 note was afterwards paid by Mrs. Connolly, as she claims for the benefit of her daughter and as an advancement to her. The evidence does not show that anything was said between the parties as to how or under what understanding *Alvah* should hold the title to the property, and the fact seems to be that Stone caused the deed to be made direct to *Alvah* on his own motion. No note or evidence of indebtedness was given by *Alvah* at any time for either the $1,000 or the $500, nor was any such thing afterwards asked or talked about.

The evidence tends to show that *Marion*, in September, 1890, received $400 from her father's estate, and that it was used in the real-estate transactions hereafter mentioned, and with no arrangement or understanding as to its repayment. In December, 1890, the Idlewild lots were sold for $500 cash and the equity in five other lots in the same locality. In January, 1891, there commenced a series of real-estate transactions conducted by *Remington* in his own name by which large profits were made, and *Marion* claims that the money used in these transactions was all of it either a part of the $1,900 of her separate estate or the fruits thereof. In January, 1891, ten acres were purchased upon contract in

Martin vs. Remington and wife.

the village of Whitefish Bay and $700 paid thereon, which ten acres were shortly afterwards disposed of at a profit of $2,340. In January, 1891, two of the Idlewild lots were exchanged for a house and four lots in the village of Whitefish Bay, known as the Lawndale property, which then became the homestead of the parties. In July, 1891, $1,000 was paid as first payment upon another ten acres of land in Whitefish Bay, which, in October, 1891, were sold to a real-estate company, and a second mortgage of $7,500 received by *Alvah* in payment. In all the transactions before named the title to the premises was taken and held by *Alvah*, and the mortgage of $7,500 ran to him, and *Alvah* in fact conducted all the business after consulting with his wife.

*Alvah* held the $7,500 mortgage in his own name on the records until March 29, 1894, when he made and recorded a nominal assignment thereof to one Martz, which assignment was made simply to escape taxation, and on the same day Martz reassigned the mortgage to *Remington*, such reassignment not being recorded. On the 30th of March, 1894, *Alvah* signed an assignment of said mortgage to *Marion;* but it does not appear that said assignment was ever delivered, nor was said assignment acknowledged until October 10, 1894, when *Alvah* bought of one Bingham the Marshall street property, and gave for such property the $7,500 mortgage, with $450 accrued interest thereon and seven months' use of the premises. The title to the Marshall street property was taken in the name of *Alvah*, and so remained until the transfer of June 5, 1895. In December, 1893, the Lawndale house and lots were exchanged for the property in Kneeland's addition, and the title thereto taken in the name of *Alvah*. Thus the property stood when the conveyances which are attacked in this action were made.

The court found that *Marion* had a separate estate (including the $1,000 advanced by her mother) of $1,900, and that, in making the various purchases and exchanges of property,

*Alvah* transacted the larger part of the business as an agent of *Marion*, and that title was taken in the name of *Alvah* for the use and benefit of *Marion*, the consideration being in each instance paid by *Marion* out of her separate estate; and that the conveyances of June 5, 1895, were made for the purpose only of carrying out the trust arranged theretofore and recognized as existing between the defendants, and not for the purpose of hindering, delaying, and defrauding any of *Alvah's* creditors; and that said conveyances were valid; and that the complaint should be dismissed. From judgment in accordance with these findings the plaintiff appeals.

For the appellant there were briefs by *Nath. Pereles & Sons*, attorneys, and *C. F. Hunter* and *Guy D. Goff*, of counsel, and oral argument by *Mr. Hunter* and *Mr. Goff*. They contended, *inter alia*, that an *express promise* is necessary to create an equity in favor of a party in a case such as this, which will justify a conveyance of property alleged to be in execution of a trust or equitable obligation. *Failing such express promise*, the conveyance is voluntary, and fraudulent as to existing creditors. *Medsker v. Bonebrake*, 108 U. S. 66, 72, 73; *Atlantic Nat. Bank v. Tavener*, 130 Mass. 407; *Towers v. Hagner*, 3 Whart. 48; *Johnston's Adm'rs v. Johnston*, 1 Grant (Pa.), 468; *Kutz's Appeal*, 40 Pa. St. 90; *Grabill v. Moyer*, 45 id. 530; *Babcock v. Eckler*, 24 N. Y. 623; *Savage v. O'Neil*, 44 id. 298; *Steadman v. Wilbur*, 7 R. I. 481; *French v. Motley*, 63 Me. 326; *In re Blandin*, 1 Lowell, 543; *Hyde v. Chapman*, 33 Wis. 391; *Estate of Hauer*, 140 Pa. St. 420; *Beecher v. Wilson*, 84 Va. 813; *Robbins v. Armstrong*, id. 810; 1 Bigelow, Fraud, 456; *White v. Carpenter*, 2 Paige, 238; *McCarroll v. Alexander*, 48 Miss. 128; *Bostford v. Burr*, 2 Johns. Ch. 405; *Bank v. Atkinson*, 32 W. Va. 203; *Driggs & Co.'s Bank v. Norwood*, 50 Ark. 42; *Besson v. Eveland*, 26 N. J. Eq. 468; *Humes v. Scruggs*, 94 U. S. 27; *Karr v. Washburn*, 56 Wis. 303; *Main v. Bosworth*, 77 id. 660; *Be-*

Martin vs. Remington and wife.

*gole v. Hazzard,* 81 id. 275. A husband, possessed of superior judgment and ability, cannot bestow all his time and talents to increase his wife's separate estate, and allow his legal obligations to go unpaid. Bump, Fraudulent Conveyances, 2631; *Glidden v. Taylor,* 16 Ohio St. 509; *Shackelford v. Collier,* 6 Bush, 149; *Penn v. Whiteheads,* 12 Gratt. 74; *Wilson v. Loomis,* 55 Ill. 352; *Lachman v. Martin,* 139 id. 450; *Penn v. Whitehead,* 17 Gratt. 527; *Boggess v. Richards' Adm'r,* 39 W. Va. 567; *Mayers v. Kaiser,* 85 Wis. 382. If a wife permits her husband to take title to her lands, hold himself out to the world as the owner of them, and contract debts on the credit of such ownership, she cannot afterwards withdraw the property from his creditors, and, by taking title to herself, defeat their claims. *Hopkins v. Joyce,* 78 Wis. 443; *City Nat. Bank v. Hamilton,* 34 N. J. Eq. 162; *Fox v. Moyer,* 54 N. Y. 125; *Besson v. Eveland,* 26 N. J. Eq. 468; *Langford v. Thurlby,* 60 Iowa, 107; *Humes v. Scruggs,* 94 U. S. 27; *Savage v. Murphy,* 34 N. Y. 508; *Sexton v. Wheaton,* 8 Wheat. 229; *Post v. Stiger,* 29 N. J. Eq. 554; *Marston v. Dresen,* 85 Wis. 530; *Ferguson v. Hillman,* 55 id. 181; *Mason v. Pierron,* 69 id. 585.

For the respondents there was a brief by *H. K. Curtis,* attorney for *Marion E. Remington,* and *C. A. Fowler,* attorney for *Alvah F. Remington,* and oral argument by *Mr. Curtis.*

WINSLOW, J. This is a contest between the wife and a creditor of the husband as to property conveyed by the husband to the wife at the time of the commencement of an action by the creditor to recover his debt. In such case, the principle is well established that the wife has the burden of showing, by clear and satisfactory evidence, that she paid for the property out of her separate estate. *Le Saulnier v. Krueger,* 85 Wis. 214. The reasons for this rule are well

stated in *Hoxie v. Price*, 31 Wis. 82, and the authorities in support of it are cited in *Horton v. Dewey*, 53 Wis. 410.

It is not claimed in the present case that the wife paid anything at the time of the conveyance to her of all the property standing in her husband's name, but it is claimed that the original property out of which these parcels grew was bought with her money, and that thereby there arose a resulting trust in her favor in all the property to which her husband had record title, which trust, though not enforceable under our statutes, has now been fully executed by the husband without fraud, and forms a good consideration for the conveyances; citing *Hyde v. Chapman*, 33 Wis. 391; *Karr v. Washburn*, 56 Wis. 303; and *Begole v. Hazzard*, 81 Wis. 274.

The facts found by the court seem to bring the case within this doctrine. The court found that the money with which the first parcel of real estate was bought was advanced and paid by *Mrs. Remington*, or (which amounts to the same thing) by Mrs. Connolly for her daughter's benefit; that subsequently *Mrs. Remington* put $500 additional of her own money into the building of the house upon the property, thus paying all the money which was put into this place out of her separate estate; that she afterwards (acting through her husband as agent) traded this property for other property, receiving some cash, and invested this cash with $400 received from her father's estate in the speculative purchases which afterwards followed, and which resulted in rapid and handsome profits; and that *Mr. Remington* invested no money of his own in these transactions, but simply took the titles of the property thus paid for by his wife's money, or its increment, in his own name for convenience in the handling thereof. There was undoubtedly sufficient evidence to support these findings of the court, and these facts clearly bring the case within the ancient rule in equity that where,

on the purchase of property, title is taken in the name of one person while the consideration is paid by another, not by way of loan to the grantee, a trust results in favor of the person paying the consideration. *Dyer v. Dyer,* 1 White & T. Lead. Cas. Eq. *203, and notes. And this doctrine applies where the purchase is made by the husband with the wife's separate estate as well as where the parties are strangers. Perry, Trusts, § 127, and cases cited. This trust arose by implication of law from the fact of the advancing of the purchase money, and not by virtue of any agreement of the parties. *Bartlett v. Pickersgill,* 1 Eden, 515; *Bigley v. Jones.* 114 Pa. St. 510; *Boyer v. Libey,* 88 Ind. 235.

True, it may be shown by parol that the money was advanced by way of a loan or as a gift, and the supposed trust thereby defeated; but we have found no evidence in the present case that would warrant us in overruling the conclusions of the trial court on this question.

Therefore there seems no escape from the conclusion, upon the facts found by the trial court, that there would have existed, prior to the passage of sec. 2077, R. S. 1878, a valid resulting trust in the wife in the various parcels of land to which the husband held title during the progress of the real-estate transactions shown by the evidence, and which finally merged into the two parcels of land which were conveyed by Remington to his wife, June 5, 1895. It is true that such trusts are abolished by sec. 2077, R. S. 1878; but it is still held that if the trustee voluntarily carries out and executes the voidable trust by conveying the property, as he is morally bound to do, such conveyance will be founded upon a sufficient consideration, and, in the absence of fraud, will be valid even as against creditors of the trustee. *Hyde v. Chapman,* 33 Wis. 391; *Begole v. Hazzard,* 81 Wis. 274. See, also, *Strong v. Gordon,* 96 Wis. 476.

The trial court has affirmatively found that the conveyances in this case were made in good faith and without

Martin vs. Remington and wife.

fraudulent intent.   The evidence is voluminous, and we shall
not rehearse it here.   While there were circumstances which
have a suspicious appearance, and would, perhaps, have jus-
tified a different conclusion, we cannot say that the findings
are against the weight of the evidence.   Nor can it be
claimed that there was a mixture or confusion of property
of the husband and wife, so as to make the whole liable for
the husband's debts.   The findings affirmatively show that
it was all the property of the wife, though managed through
the agency of her husband, and there is sufficient evidence
in support of this conclusion.   It is certainly true in this
case that the wife's property has increased very largely and
rapidly, apparently through the sagacity and industry of
the husband, but this court has not adopted the rule that
such increment can be reached by the creditors of the hus-
band.   *Mayers v. Kaiser*, 85 Wis. 382; *Ansorge v. Barth*, 88
Wis. 553.

. The final claim made by appellant is that the plaintiff
purchased the note on the faith of *Remington's* guaranty,
relying on his apparent ownership of the $7,500 mortgage
and the Lawndale property, thus raising an estoppel against
the wife, as held in *Hopkins v. Joyce*, 78 Wis. 443.   The diffi-
culty with this contention is that the court has found, upon
what seems to be sufficient evidence, that the plaintiff did
not rely upon such apparent ownership.

There are no other questions raised which seem important
enough to require attention.

*By the Court.*— Judgment affirmed.