HATHAWAY, Appellant, vs. ARNOLD, imp., Respondent.

*February 3—May 1, 1914.*

*Fraud: Conveyances of land:* Bona fide *purchaser: Husband and wife: Principal and agent: Imputed knowledge: Evidence: Relevancy and materiality: Forgery: Pleading: Amendment: Reopening case: Notice of* lis pendens.

1. Exclusion of preliminary questions intended to lead up to proof that a deed to one of the defendants was forged was not error where the purpose of such questions was not indicated and no issue of forgery was raised by the pleadings.

2. The denial of a motion, made during the trial, to amend the complaint so as to allege forgery of a deed to one of the defendants, was not an abuse of discretion, where the statements of fact in the supporting affidavit, if taken as true, had little tendency to prove the commission of a forgery, and a statement therein that the plaintiff expected to prove that one of the signers did not acknowledge the deed was not corroborated by affidavit of such signer, although he was plaintiff's principal witness on the trial and admittedly hostile to the defendants.

3. A motion to reopen the case, long after the parties had submitted their proofs, to enable plaintiff to offer newly discovered evidence upon the question whether one of the defendants was a *bona fide* purchaser of the land in question, is *held* to have been properly denied upon the showing made.

4. A transaction by which a married woman acquires title, ostensibly in the character of a *bona fide* purchaser, to land which her husband had previously secured from another by fraud, is naturally and properly viewed with suspicion by the courts.

5. But in this case, it appearing that the wife had a separate estate, and nearly all the direct evidence tending to show that she

paid full value for the land to a corporation in which the title had been vested, and that she had no knowledge of the fraud, it is *held* that a finding of the trial court to the effect that she was a *bona fide* purchaser should not be set aside unless knowledge of the fraud was chargeable to her as a matter of law.

6. The trial court having in substance found upon sufficient evidence that the husband did not act as his wife's agent in the transaction in question, there is no conclusive presumption that she had knowledge of his fraudulent acts affecting such transaction.

7. Where the information which an agent has of previous transactions and his relation thereto are of such a character that he would not disclose to his principal a fraud which had been perpetrated by him therein, notice of such fraud is not imputable to the principal as a matter of law.

8. The question being whether a defendant was a *bona fide* purchaser of certain land conveyed to her before the action was commenced, evidence of the filing of notice of *lis pendens* before her conveyance was recorded was immaterial.

APPEAL from a judgment of the superior court of Douglas county: CHARLES SMITH, Judge. *Affirmed.*

This action was brought by the plaintiff to recover five lots or the value thereof from the defendants, on the ground that the defendants had defrauded plaintiff out of such lots. The court in substance found that the E. A. Arnold Land Company, a corporation, acted as the agent of the plaintiff in purchasing all of the lots owned by the Roosevelt Estate in the city of Superior; that such purchase was made for the sum of $8,000 and the purchase price was paid by the plaintiff to its agent; that the agent represented that the number of lots owned by said estate was sixty-nine, whereas in fact it owned seventy-four lots, and that number of lots was purchased with the money furnished by the plaintiff; that for the purpose of cheating and defrauding the plaintiff, the Arnold Land Company caused sixty-nine of said lots to be conveyed by the Roosevelt Estate to the plaintiff and the remaining five lots to be conveyed to the Roosevelt Terrace Company, a corporation which was practically owned and controlled by E. A. Arnold,

who was also a half owner of the stock in the E. A. Arnold Land Company and who negotiated the purchase of the lots from the Roosevelt Estate, acting as the agent of the corporation; that the five lots out of which the plaintiff had been defrauded were of the value of $3,250.

These lots were conveyed to the Roosevelt Terrace Company about the month of June, 1907, and were conveyed by the Roosevelt Terrace Company to *Mabel A. Arnold,* the wife of E. A. Arnold, on or about February 1, 1908, and the deed was recorded on March 17, 1908. This action was commenced on March 14, 1908, against the two defendant corporations, and after the recording of the deed to *Mabel A. Arnold* she was also made a party.

The principal controversy in the case arises from the seventeenth finding of fact, which is as follows:

"That on and prior to February 1, 1908, the defendant *Mabel A. Arnold,* who was then the wife of E. A. Arnold, had a separate estate amounting to several thousand dollars; that she was the owner of three pieces of land, 160 acres in section 8, 80 acres in section 11, and 106 acres in section 12, in Douglas county, and had during the months of November and December, 1907, loaned money to the Roosevelt Terrace Company in the sum of $802; that on or about February 1, 1908, negotiations were had between the defendant *Mabel A. Arnold* and A. S. Andrews, who was then the president of the Roosevelt Terrace Company, in which negotiations E. A. Arnold participated, wherein and whereby the said *Mabel A. Arnold* purchased of the Roosevelt Terrace Company the five lots in question, giving in exchange therefor the three pieces of land above described, conveying the same to the Roosevelt Terrace Company, and also applying the $802 loaned to the company as above stated, and receipting to the company for the payment of such loan, and received from the Roosevelt Terrace Company a warranty deed for the five lots in question, which was delivered to her on or about February 3, 1908, and recorded in the office of register of deeds of Douglas county on March 17, 1908. That at the time of making said negotiations and the purchase of said lots and conveyance of the same and payment therefor as above stated the defend-

ant *Mabel A. Arnold* had no knowledge or information of the transaction between E. A. Arnold Land Company and the plaintiff and was a *bona fide* purchaser of the lots in question, having purchased and paid for the same without any knowledge or information that the title of the Roosevelt Terrace Company was not good."

As conclusions of law the court found that *Mrs. Arnold* was a *bona fide* purchaser of the lots in controversy and that she was entitled to the same and to recover costs against the plaintiff. The court further found that the plaintiff was entitled to judgment against the Arnold Land Company and the Roosevelt Terrace Company for the value of the five lots in question, which was found to be $3,250 with interest, and for costs and disbursements of suit. The plaintiff appeals from that portion of the judgment which was entered in favor of *Mabel A. Arnold.*

For the appellant there was a brief by *Grace, Hudnall & Fridley,* and oral argument by *George B. Hudnall.*

For the respondent, *Mabel A. Arnold,* there was a brief by *Luse, Powell & Luse,* and oral argument by *L. K. Luse.*

The following opinion was filed February 24, 1914:

BARNES, J. The plaintiff assigns the following errors upon which he relies to reverse the judgment: (1) The court erred in excluding evidence offered to show that the deed from the Roosevelt Terrace Company to *Mabel A. Arnold* was forged and void. (2) The court erred in denying the motion of the plaintiff to amend the complaint upon the trial so as to allege that said deed was forged and void. (3) The court erred in denying the motion of the plaintiff, made after the testimony had been taken and before the findings of fact and conclusions of law had been filed, to be permitted to procure testimony as to the domestic relations existing between *Mabel A. Arnold* and her husband at the time an alleged settlement was made between them on July 6, 1906. (4) The court erred in making the seventeenth finding of fact and

in making the conclusions of law based thereon. (5) The court erred in denying the motion of the plaintiff after judgment to be permitted to offer in evidence the notice of *lis pendens* which was filed after the action was begun. Some other errors are assigned, but the foregoing raise all of the questions that are argued in the briefs or that were argued at the bar.

1. The first error assigned is not well taken. Three questions were asked which it is claimed would tend to show that the deed under which *Mabel A. Arnold* claimed was forged, if the court had permitted them to be answered. The court did allow one of them to be answered, and the other two were merely preliminary and did not indicate that plaintiff was attempting to prove forgery. Besides, no such issue was raised by the pleadings.

2. The plaintiff during the trial moved to amend the complaint by alleging that the deed to *Mrs. Arnold* was a forgery. This motion was based on an affidavit made by the plaintiff. The material statements contained in the affidavit were that E. A. Arnold had chemicals in his office which would remove ink stains and that he was an expert in their use; that by the use of such chemicals the descriptions inserted in the deed which was acknowledged might have been erased and others substituted, and that plaintiff verily believed this had been done; that Charles Highfield, one of the witnesses to the deed, would testify that when he signed the deed as a witness it had not been signed by the president and secretary of the corporation, and that he signed without knowing what the deed contained; that Arnold had stated to C. A. Russell that plaintiff would have "a h—l of a time getting those lots back," as he had deeded three of them to his wife and two to his little girl, and that the plaintiff expected to prove that the deed offered in evidence was not acknowledged by C. A. Russell. The affidavit further showed that defendants refused to produce the deed and relied on the record of the same.

The evidence at the time the motion was made was to the effect that the deed was lost.

The court denied the application on the merits, evidently believing that it would not be in furtherance of justice to grant it.

We do not think the court abused the discretion vested in it by sec. 2830, Stats. If all of the statements of fact contained in the affidavit were taken to be true they would not have much tendency to prove the commission of a forgery. It is true the plaintiff states that he believes a forgery was committed, but this is only his conclusion drawn from the facts which he states in his affidavit. It is likewise true that plaintiff stated he expected to prove that Russell did not acknowledge the deed, the record of which was offered in evidence. No affidavit to this effect was made by Russell, although he was plaintiff's principal witness on the trial and admittedly hostile to the defendants. It is pretty evident that if plaintiff could produce any evidence tending to show forgery, he expected to get it from Russell. Russell was equally interested with E. A. Arnold in the E. A. Arnold Land Company, and participated with Arnold in the fraud which had been practiced on the plaintiff, and apparently shared in the profits of the transaction. Russell had been examined and cross-examined at great length before the motion to amend was made, and the court might well have reached the conclusion that he was not a witness whose testimony was entitled to credence.

3. Long after the parties had submitted their proofs, the plaintiff sought to have the case reopened for the purpose of taking certain testimony. The Arnolds claimed that they had a settlement July 6, 1906, by which certain real property was to be conveyed to *Mrs. Arnold* on account of moneys furnished from her separate estate to her husband for investment. These lands were part of the consideration which she claimed to have paid the Roosevelt Terrace Company for the

lots conveyed to her by that company. The proof which plaintiff proposed to offer was to the effect that when the settlement of 1906 was made the parties were contemplating divorce proceedings and were agreeing upon a division of property preparatory to the commencement of the divorce case. We think it is quite clear that on the showing made the motion was properly denied.

4. The principal contention arises over the seventeenth finding of fact. The appellant insists that the court was wrong in holding that *Mrs. Arnold* was a *bona fide* purchaser without notice, and that in any event E. A. Arnold acted as the agent of his wife in the transaction and that his knowledge was imputable to her as a matter of law.

A transaction by which a husband fraudulently secures the title to the property of another, and then so manipulates it as to get the title transferred to his wife, and at the same time makes her a good-faith purchaser so that the property is lost to its true owner, is naturally and properly viewed with suspicion by the courts. The transaction here involved has many earmarks that tend to show that it was crooked. There was some direct evidence which indicated that *Mrs. Arnold* had knowledge of the fraud that had been perpetrated. Legitimate inferences to the same effect might have been drawn from other testimony. We would have been better satisfied had the trial court held that the evidence failed to establish the *bona fides* of the transaction by clear and satisfactory evidence as the law requires. *Horton v. Dewey,* 53 Wis. 410, 10 N. W. 599; *Fisher v. Shelver,* 53 Wis. 498, 10 N. W. 681; *Le Saulnier v. Krueger,* 85 Wis. 214, 54 N. W. 774; *Martin v. Remington,* 100 Wis. 540, 545, 76 N. W. 614; *Disch v. Timm,* 101 Wis. 179, 192, 77 N. W. 196. There is nothing, however, to show that the court did not have the correct rule of law in mind when deciding the case. All of the direct evidence except that given by Russell tended to show that *Mrs. Arnold* had no knowledge of the fraud and that she had property acquired from her separate estate at the

time she received a conveyance of the lots and that she paid full value for them by conveying property which she owned to the Roosevelt Terrace Company and by canceling a debt of $802 which that company owed her.    It may well be that the court disbelieved Russell's testimony, for reasons before stated as well as for other more cogent reasons.    The court was evidently impressed with the sincerity and candor of *Mrs. Arnold* and must have been clearly satisfied that, notwithstanding the suspicious circumstances alluded to, she was in reality a good-faith purchaser.    Probably no great amount of credence was given to either Arnold or Russell.    While we are doubtful about justice having been done, we are not at all certain that a reversal might not work injustice, and we conclude that the finding should not be set aside unless knowledge of the fraud was chargeable to *Mrs. Arnold* as a matter of law.

Appellant concedes that the evidence showed that *Mrs. Arnold* had a separate estate.    She testified that she had her earnings and the profits derived from them invested in real estate; that she always relied upon her husband in all her real-estate matters; that substantially all of her money had been so invested by him; that she never purchased anything without Arnold having something to do with it; that he bought tax certificates for her and acted on his own judgment as to what to buy, and that he bought lands with her money and that she did not know whether he took the title in her name or not.    If the alleged settlement made between Arnold and his wife in 1906, and the deed made conveying the lots in controversy, be left out of consideration, the proof shows that Arnold had a free hand in investing his wife's money and that she did not have any accurate knowledge of what was bought with it or who held the title to it.    In one portion of her testimony *Mrs. Arnold* testified that the deal for the lots in question was made entirely through Mr. Arnold.    At another time she said she should judge it was, that he was to look after the details for her, to close up the transaction.

Her narrative of how she came to acquire the lots was that she owned 406 acres of land in Douglas county which her husband wanted her to convey to the Roosevelt Terrace Company, and that she refused to do so unless she was paid what they were worth; that her husband desired her to take the note of the company for the purchase price and that she refused; that she knew the Terrace Company owned or claimed to own the lots in question, as they were next to the house in which she lived and which she owned; that she offered to trade the lands for the lots and also to cancel an indebtedness from the Terrace Company to her as an additional consideration; that she talked the matter over with her husband, who was president of the corporation, and with Dr. Andrews, who was secretary thereof, and that they finally agreed to a trade, she representing herself in the transaction and they representing the corporation in which they owned or controlled practically all of the stock.

The appellant's proposition on this branch of the case is that Arnold acted as the agent of his wife in the purchase of the lots in controversy; that he having committed the fraud by which his corporation acquired them he knew all about it, and that there is a conclusive presumption that *Mrs. Arnold* had actual or constructive knowledge of the acts of her agent, under such decisions as *Andrews v. Robertson,* 111 Wis. 334, 87 N. W. 190; *Brothers v. Bank of Kaukauna,* 84 Wis. 381, 54 N. W. 786; *Wolf Co. v. Kutch,* 147 Wis. 209, 215, 132 N. W. 981; and *Pluto P. Co. v. Cuba City State Bank,* 153 Wis. 324, 331, 141 N. W. 220.

The contention cannot be upheld for two reasons. In the first place the evidence justified the court in finding that Arnold did not act as his wife's agent in the sale of the lots to her, and it has in substance so found.

In the next place, the information which the agent had in this case was of such a character and his relation to the previous transaction was of such a nature that he would not disclose the fraud that had been perpetrated. On such a state

of facts there is no conclusive presumption of notice to the principal. *Cole v. Getzinger,* 96 Wis. 559, 576, 71 N. W. 75; *Melms v. Pabst B. Co.* 93 Wis. 153, 169, 66 N. W. 518; *Allen v. South Boston R. Co.* 150 Mass. 200, 22 N. E. 917.

We have not overlooked an item of evidence to the effect that about November 1, 1907, *Mrs. Arnold* requested her husband to secure one of the lots in question for her which was adjacent to her homestead. This request was made about four months after the Roosevelt Terrace Company had fraudulently acquired the property, and it does not appear that Arnold paid any attention to the request or that it figured in the transaction of February 1, 1908, when the five lots were conveyed to *Mrs. Arnold.* Had it been otherwise, under the rule in *Cole v. Getzinger,* the agent's knowledge would not be imputable to the principal as a matter of law.

5. We do not see how the introduction in evidence of the notice of *lis pendens* could have affected the plaintiff's rights or changed the result of the suit in any way. The property had been conveyed to *Mrs. Arnold* before the action was commenced and plaintiff acquired no right in the lots after the deed was given and before it was recorded which he did not possess before.

*By the Court.*—Judgment affirmed.

Vinje, J., took no part.

A motion for a rehearing was denied, with $25 costs, on May 1, 1914.