SPANGLER, Respondent, vs. KITTEL and another, Appellants.

*October 20—November 16, 1920.*

*Vendor and purchaser: Fraud: Statements recklessly made: Transfer taken in name of wife: Effect: Wife as bona fide purchaser.*

1. A transaction whereby a husband, without consideration and by means of fraudulent representations, procured the title to the property of another to be transferred to his wife, so that if she be a good-faith purchaser the title will be lost to the true owner, is properly viewed with suspicion by the courts and should be very closely scrutinized on account of the inducements and facilities offered for fraud.
2. Where the wife, a woman of more than average intelligence and well able to take care of herself in business transactions and who knew her husband was having financial difficulties, received a deed from a grantor with whom she had never

had any dealings, which recited a consideration of $25,000, and in return therefor gave merely $5,000 of worthless bonds and assumed a mortgage of $12,000, without making inquiries from any person other than her husband, the deed, which had been procured by the husband from the grantor by fraud, will be canceled, the wife not being a *bona fide* purchaser, since under the circumstances she should have made inquiries, which would have revealed the fraudulent transaction.

3. One who induced another to enter into a contract for the exchange of real property by statements that the title to the land to be exchanged was merchantable and subject to only one incumbrance, and who procured a deed to plaintiff's land by the statement that a deed to the land to be exchanged therefor was ready for delivery, when in fact there was no such deed and the land was incumbered for more than $100,000 in addition to the stated incumbrance, was guilty of fraud, even though the statements were not knowingly untrue, since they were so recklessly in disregard of the truth as to be fraudulent.

APPEAL from a judgment of the circuit court for Dodge county: MARTIN L. LUECK, Circuit Judge. *Affirmed.*

Action to cancel deed. On June 9, 1916, the plaintiff was the owner of certain real estate in the city of Beaver Dam, on which were located two flat buildings. On that day he entered into a land contract with the Alfalfa Valley Land Company, a Minnesota corporation doing business in North Dakota, whereby it was agreed that the Land Company would sell and convey to the plaintiff 800 acres of land in McHenry county, North Dakota, for the sum of $29,600, being at the rate of $37 per acre. The plaintiff was to pay $600 as earnest money, $12,000 by the assumption of incumbrances on the North Dakota land, and agreed to pay the balance by conveying to the Land Company, or to such person as it might direct, the real estate situated in Beaver Dam, with the furniture and equipment, valued at $25,000, subject to a first mortgage of $6,500 and a second mortgage for $1,500, making the plaintiff's equity therein $17,000. It was agreed that each of the parties should

furnish an abstract and deliver possession by July 1, 1916. There was a provision, however, by which, if the title to the North Dakota property was not merchantable on the date of settlement, the Land Company should have a reasonable time thereafter in which to make the same merchantable. The plaintiff claimed that the making of such contract was procured by the false and fraudulent representations of one *Richard C. Kittel* as to the ownership and title of the North Dakota land, as to the state of the title and incumbrances thereon, and as to the financial responsibility of the Land Company. The trial court found against that contention and it is not pressed here. At the solicitation of *Kittel* the plaintiff executed a mortgage for $12,000 upon the Beaver Dam property, the proceeds of which *Kittel* was to apply toward the payment of the mortgages upon the Beaver Dam property, amounting to $8,000, the remaining $4,000 to be paid to the plaintiff for the purchase of cattle to be placed upon the North Dakota land, it being represented to the plaintiff that at that time a deed of the North Dakota land was on deposit in the First National Bank of Towner, North Dakota; that *Kittel* was a man of large financial means, high standing and reputation, whereas it appears as a fact that the North Dakota lands were heavily mortgaged, to a sum exceeding $100,000 in addition to the mortgage which the plaintiff was to assume, and that the Land Company had no right or authority to convey the real estate, had no abstract as represented, and that the company was in fact insolvent and bankrupt. On September 15, 1916, the plaintiff and his wife, at the solicitation of *Kittel,* executed a deed of the property situated in Beaver Dam in blank. It appears that the execution of such deed was procured from the plaintiff in reliance upon representations made to the plaintiff by *Kittel* as to the situation of the title, the financial responsibility of *Kittel,* and other representations. After *Kittel* had procured the deed he caused to be inserted therein the name of his wife, *Florence E. Kittel.* By the

terms of the deed she was to assume the $12,000 mortgage, and for the balance of the purchase price, $17,000, she delivered to her husband refunding bonds of the Northern Trading Company of the par value of $5,000. It was claimed by her that it was a pure investment upon her part, made without any knowledge of the transactions carried on between the plaintiff and her husband or any of the other defendants. She further claimed that she was the lawful *bona fide* holder in fee of the real estate, had taken possession of the same, and taken the rents and profits therefrom. The $12,000 mortgage on the Beaver Dam property passed into the hands of the First National Bank at Towner. Upon the opening of the trial the First National Bank of Towner stipulated that judgment might go against it without costs. At the close of the trial the court found, in addition to the facts stated, that the title to the North Dakota property was lost to the Land Company through a foreclosure of one of the liens upon it; that the bonds which *Mrs. Kittel* gave for the Beaver Dam property had no market value whatever and no actual value; that they could be used only for perfecting the title to some of the North Dakota property; that *Florence E. Kittel* did not know all about the dealings or about the details of the transaction between the plaintiff and her husband, but that she had sufficient knowledge to put her upon inquiry; that she knew her husband was in financial difficulty; that she knew that whatever rights her husband had in the Beaver Dam property he had acquired through a trade, but that she made no inquiry of any one, excepting her husband, to ascertain what the condition of the title was, the nature of the transaction, and was therefore not an innocent party, but took the same subject to all equities existing in favor of the plaintiff; that no fraud was practiced by *Mr. Kittel*, or any agent of his, or any of his companies, in procuring the original contract; that the value of both the Beaver Dam property and the North Dakota property was overstated in the contract; the value of the Beaver Dam property was $15,000, and the value of

the North Dakota property did not exceed $20 per acre, or $16,000; that neither the Land Company nor *Kittel* performed the contract as to the conveyance of the North Dakota land; that the plaintiff performed the contract so far as he was called upon to do so; that the deed to the Beaver Dam property was obtained by *Kittel* upon the representation that a deed conveying good title to the North Dakota lands was then on deposit in the bank; that it was necessary, in order to close out the deal, that the deed to the Beaver Dam property be given; that the contents of the deed were not misrepresented to the plaintiff; that the deed was presented to the plaintiff and his wife by *Kittel* and signed by them; that the record title to the North Dakota lands was in the Northern Trading Company; that there were liens and clouds upon the title which make it unmerchantable. There were formal findings and judgment for the plaintiff setting aside the deed from the plaintiff and his wife to *Florence E. Kittel,* restoring to the possession of the plaintiff the personal property and equipment situated in the apartment building on the Beaver Dam real estate, canceling the note and mortgage of $12,000 bearing date July 1, 1916, setting aside the assignment thereof to the First National Bank of Towner, North Dakota, barring the defendants, *Florence E. Kittel, Richard C. Kittel,* and the First National Bank of Towner, North Dakota, from any right in or to the premises, and for costs, from which judgment the defendants, *Florence E. Kittel* and *Richard C. Kittel,* appeal.

For the appellants there was a brief by *Clark & Lueck* of Beaver Dam, attorneys, and *Albert N. Eastman* of Chicago, of counsel; and the cause was argued orally by *A. W. Lueck* and *Royal F. Clark.*

*C. A. Markham* of Beaver Dam and *J. F. Baker* of Madison, for the respondent.

ROSENBERRY, J. It is contended on the part of the defendants *Kittel* that the trial court erred in finding that

*Florence E. Kittel* was not an innocent purchaser for value; and second, that the court erred in failing to dismiss the plaintiff's complaint for the reason that the plaintiff is not in court with clean hands. In addition to the facts above stated, it appeared that in July, 1916, the plaintiff moved his family upon the North Dakota farm, taking with him his horses, machinery, and household furniture, and proceeded to make extensive and valuable improvements upon the farm, erecting buildings and making preparations for occupying the farm during the following year. That the defendant *Richard C. Kittel* was guilty of fraud in the making of the representations by virtue of which he secured the execution of the $12,000 mortgage by the plaintiff and the execution of the blank deed by virtue of which the defendant *Florence E. Kittel* subsequently took title, seems to be amply established. The serious question in the case is whether or not *Florence E. Kittel* had knowledge of such fraud or of circumstances which charged her with notice. The trial court neither found, nor is it claimed, that *Florence E. Kittel* had actual knowledge of the facts and circumstances connected with the exchange of the properties in question. It is said that she knew that her husband was dealing extensively in real estate, that he was operating through several corporations which he controlled, and that the property described in the deed to her was a property involved in one of these transactions. She knew that her husband was in straitened financial circumstances and that these facts were sufficient to put her upon her inquiry. The answer of *Mrs. Kittel* to this contention is that there were no circumstances known to her which suggested a path of inquiry and that there was no path of inquiry which led to knowledge of the ultimate facts, to wit, that her husband had procured the execution of the deed through fraud and without consideration. *Mrs. Kittel* was a woman thirty-nine years of age, had been married to *R. C. Kittel* twelve years, and during that time had resided at Casselton, North

Dakota. She had been a school teacher, kept a bank account of her own, was a stockholder in the R. C. Kittel Company, knew of her husband's connection with the R. C. Kittel Company, the Northern Trading Company, and the Alfalfa Land Company. It appears that she was a woman of more than average intelligence, well able to take care of herself in business transactions. A transaction such as this, whereby, without consideration and by means of fraudulent representations, a husband procures the title to the property of another to be transferred to his wife so that if she be a good-faith purchaser the title will be lost to the true owner, is properly viewed with suspicion by the courts and should be very closely scrutinized on account of the great inducements and facilities afforded for the commission of fraud. *Hathaway v. Arnold,* 157 Wis. 22, 145 N. W. 780; *Cole v. Getzinger,* 96 Wis. 559, 71 N. W. 75. The deed by virtue of which she took title recited a consideration of $25,000. For this she gave $5,000 of refunding bonds of the Northern Trading Company and assumed a mortgage of $12,000. Although the deed ran from *Spangler* to her, she had never had any dealings with *Spangler.* She made no inquiries from him, or any one, as far as the record shows, as to what *Spangler* had received for the deed. The bonds which she gave as part payment of the purchase price were found by the court to be worthless, and were worthless except that under some contingencies, which do not clearly appear, they might have been used by *Kittel* in procuring a release of some of the prior liens on some of the lands traded to plaintiff. Although she came to Beaver Dam to examine the property described in the deed and ascertained the state of the title thereto, we are of the opinion that the trial court was right in holding that under all the circumstances she was not a *bona fide* purchaser without notice. In reply to this contention it is urgently and ably argued by her counsel that there was no path of inquiry open to her. It seems to us that upon very slight inquiry from any one con-

nected with the transaction, other than her husband, the true situation would have been fully disclosed. Inquiry from *Spangler,* who was in the state in which she was a resident, would have elicited the fact that he supposed a deed free and clear of incumbrances was on deposit in the bank. She knew of the liens against this property or could easily have ascertained the same. Inquiry at the bank would have disclosed the fact that no such deed was there, and there was abundant opportunity for ascertaining the true facts. In November, 1916, *Richard C. Kittel* pleaded guilty to a charge of unlawful banking and was sentenced to confinement, pursuant thereto. If in reliance upon the statements made by her husband she has been misled to her injury, that is a regrettable circumstance, but not material here. While the court hesitated to pronounce the conduct of *Kittel* in procuring the deed from *Spangler* to be fraudulent, we have no hesitation in so characterizing it. Whether he had an active intent to defraud the plaintiff or not, the statements which he made, if not knowingly untrue, were so recklessly in disregard of the truth as to be fraudulent. As against *Richard C. Kittel* there can be no doubt of the plaintiff's right to a full recovery. Having in mind the suspicion which naturally attaches to a transaction between husband and wife where a third party is deprived of his property, we are of the opinion that the trial court correctly held the defendant chargeable with notice as to the true state of the title and that she took the same subject to all the equities existing in favor of the plaintiff. It is very doubtful, indeed, if she has lost anything of value by the transaction.

The contention of the defendants *Kittel* that the plaintiff is not in court with clean hands is based upon the proposition that he very much overstated the value of the Beaver Dam property and that, by reason of such overstatement of value, *Richard C. Kittel* was unable to procure the necessary funds with which to clear the title to the Dakota prop-

erty. We find nothing in the record to substantiate this claim. The deed was drawn and prepared by *Kittel*, presented to *Spangler* and his wife, and signed by them. There is no testimony, so far as we can find, that any one relied upon the statement as to the amount of the consideration or in any way hindered the defendant *Kittel* in his operations, or that it was relied upon by *Mrs. Kittel*. So far as we are able to ascertain there was no element of bad faith in the conduct of *Mr. Spangler* in relation to any of these transactions.

*By the Court.*—Judgment affirmed.